UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FELORAN ZOROOFCHI, et al., <br><br> Plaintiffs, <br><br> v. <br><br> MARCO RUBIO, et al., <br><br> Defendants. | Case No. 1:24-cv-01556 (ACR) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Feloran Zoroofchi is an American citizen. Dkt. 1 ¶ 1. In April 2006, she filed an I-130 visa petition for her sister, Plaintiff Leyli Zoroufchi, and her sister's husband, Plaintiff Mohammad Seraj Ansari. *Id.* U.S. Citizenship and Immigration Services (USCIS) approved the petition in August 2009 and forwarded it to the State Department's National Visa Center (NVC) for pre-processing. *Id.* ¶ 59. In September 2019, Plaintiffs Zoroufchi and Ansari paid the appropriate visa processing fees and submitted their Forms DS-260, Online Immigrant Visa and Alien Registration Applications, to the NVC. *Id.* ¶ 2. In July 2023, they interviewed at the U.S. Embassy in Yerevan. *Id.* ¶ 3. Following the interview, Plaintiff Zoroufchi was issued a visa, while Plaintiff Ansari's case was placed in administrative processing, where it remains. *Id.* ¶ 4.

On May 27, 2025, Plaintiffs sued Secretary of State Antony Blinken, Assistant Secretary of State for Consular Affairs Rena Bitter, Consul General of the United States Embassy in Yerevan Stephanie Zakhem, and Acting Director of the Office of Screening, Analysis, and

1

Coordination within the Bureau of Consular Affairs' Visa Service Office Carson Wu.[1]  *Id.* ¶ 20–23.  Citing the Administrative Procedure Act (APA), 5 U.S.C. § 555(b) and § 701 *et seq.*, the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq.*, and the Mandamus Act, 28 U.S.C. § 1361, Plaintiffs seek an order compelling Defendants to adjudicate Plaintiff Ansari's application.  *Id.* ¶¶ 12–13, 148.  Defendants moved to dismiss the Complaint on July 29, 2024.  Dkt. 6.  Plaintiffs' frustration is understandable, but their Complaint does not state any plausible claims.  The Court therefore **DISMISSES** this case without prejudice.

## I.     LEGAL BACKGROUND

A U.S. citizen who wants to help a noncitizen relative obtain lawful permanent resident status may file an I-130 Petition for Alien Relative with USCIS, a subagency of the Department of Homeland Security (DHS).  *See* 8 U.S.C. §§ 1151(b)(2)(A)(i), 1153(a), 1153(f), 1154(a)(1); 8 C.F.R. § 204.1(a)(1).  USCIS considers the evidence presented with the petition, which it approves if the U.S. citizen demonstrates a qualifying relationship with the beneficiary.  *See* 8 U.S.C. § 1154(b); 8 C.F.R. § 204.2.  If the noncitizen beneficiary is located outside the United States, USCIS sends the approved petition to the NVC for processing.  *See* 8 U.S.C. § 1202; 8 C.F.R. §§ 204.1(a), 204.2(d)(3).  The beneficiary must then submit additional paperwork, including a visa application form, and pay any fees.  *See* 22 C.F.R. §§ 42.62–.63; 9 Foreign Affs. Manual § 504.1-2(b), https://fam.state.gov/FAM/09FAM/09FAM050401.html.  Once the beneficiary meets those requirements, the NVC designates the case "documentarily complete" and coordinates with the appropriate consulate or embassy to schedule the applicant for a

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Secretary of State Marco Rubio, Acting Assistant Secretary of State for Consular Affairs Julie Stufft, and Director of the Office of Screening, Analysis, and Coordination Robert Jachim are "automatically substituted" for their predecessors.  Fed. R. Civ. P. 25(d).

required consular interview. *See* 22 C.F.R. § 42.62; 9 Foreign Affs. Manual §§ 504.1-2(b)–(d). "Appointments are generally scheduled in the chronological order of the documentarily complete applicants." 9 Foreign Affs. Manual § 504.1-2(d). Following the interview, the consular officer "must" generally either "issue the visa" or "refuse the visa." 22 C.F.R. § 42.81(a). If the consular officer needs additional information to determine the applicant's eligibility, she may, "in accordance with [State] Department procedures," refuse the visa pending "further administrative processing." Administrative Processing Information, U.S. Dep't of State, https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/administrative-processing-information.html.II.

## LEGAL STANDARD

Defendants' Motion seeks dismissal both under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction and under Rule 12(b)(6) for failure to state a claim.

When a defendant moves to dismiss under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Where, as here, "the defendant challenges only the legal sufficiency of the plaintiff's jurisdictional allegations," *Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000), the Court "assume[s] the truth of all material factual allegations in the complaint and construe[s] the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged," *Am. Nat'l Ins. Co. v. F.D.I.C.*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (cleaned up).

To avoid dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). To meet that standard, a plaintiff's allegations must

support a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (cleaned up).

### III.   ANALYSIS

Defendants argue that Plaintiffs lack standing to sue and that the Complaint does not state any plausible claims.[2] The Court rejects the first argument but agrees with the second.

#### A.   Plaintiffs Have Standing to Sue

Defendants contend that Plaintiffs lack standing. Dkt. 6 at 17–21. To establish standing, "Plaintiffs must state a plausible claim that they have suffered an injury in fact fairly traceable to [Defendants'] actions . . . that is likely to be redressed by a favorable decision on the merits." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015) (cleaned up). Defendants make four arguments. First, that Plaintiffs have suffered no injury in fact because a visa-processing delay is a procedural injury that cannot confer standing unless tied to some concrete interest, *see Aminjavaheri v. Biden*, Civ. A. No. 21-2246 (RCL), 2021 WL 4399690, at *6 (D.D.C. Sept. 27, 2021) (quoting *WildEarth Guardians v. Jewell*, 738 F.3d 298, 305 (D.C. Cir. 2013)), which Plaintiffs purportedly lack because they have no constitutional right to enter the United States, Dkt. 6 at 18; *see Trump v. Hawaii*, 585 U.S. 667, 703 (2018). Second, that Plaintiffs Zoroofchi and Zoroufchi lack standing to sue because their injury flows from the rights of a third party—in this case, the delayed adjudication of Plaintiff Ansari's visa application. Dkt.

---

[2] Defendants also argue that the consular nonreviewability doctrine bars Plaintiffs' claims, and that Defendants do not have any clear, nondiscretionary duty to act, as is necessary for a mandamus claim. Dkt. 6 at 18–25. Neither argument implicates the Court's Article III jurisdiction, and so the Court need not address them before dismissing this case on other grounds. *See Rashidian v. Garland*, No. 23-cv-1187, 2024 WL 1076810, at *5 & n.5 (D.D.C. Mar. 8, 2024) (explaining why the Court may bypass these arguments).

6 at 19.  Third, that the orders and writs of mandamus that Plaintiffs seek cannot remedy their stated injuries.  *Id.* at 20–21.  And fourth, that none of the named Defendants can redress Plaintiffs' injuries because they play no role in processing Plaintiffs' applications.  *Id.* at 21–22.  The Court finds all standing objections unpersuasive.

Defendants' first argument unduly restricts the range of concrete injuries that can confer standing.  While Defendants are correct that Plaintiffs have no constitutional right to enter this country, *see, e.g.*, *Hawaii*, 585 U.S. at 703, concrete interests that satisfy standing are not limited to those "specified by the Constitution itself," *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021).  Rather, "monetary injury" and "intangible harms . . . with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts" also suffice.  *Id.*  Plaintiffs identify monetary injuries: they allege that their separation "requires them to financially maintain two homes, one in the United States and one in Iran," forcing them to "spend from their savings."  Dkt. 1 at ¶ 139.  Each has also plausibly alleged intangible, yet concrete, harms: "[t]he failure of the Defendants to timely adjudicate Plaintiff [Ansari's] application is causing severe emotional distress and psychological harm," including "anxiety and sleeplessness that is further augmented by the separation."  *Id.* at ¶¶ 132, 139.

Defendants' second argument relies on an inapposite case.  They argue that Plaintiffs Zoroofchi and Zoroufchi lack standing to sue because their injury flows from the rights of a third party.  *See* Dkt. 6 at 19.  To support this claim, Defendants cite *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1163–64 (D.C. Cir. 1999), where the D.C. Circuit explained, in *dicta*, that the plaintiff's American sponsors—a company and an employee—had no standing to challenge the denial or revocation of the plaintiff's visa.  Dkt. 6 at 20.  But here, Plaintiffs Zoroofchi and Zoroufchi are Plaintiff Ansari's family members.  And this Court has previously found that a

visa applicant's family members can satisfy third-party standing. *See, e.g.*, *Norouzi v. U.S. Dep't of State,* No. 1:24-CV-1282 (ACR), 2025 WL 721767, at *2 (D.D.C. Mar. 6, 2025).

Defendants' third argument misunderstands the relief Plaintiffs seek. Defendants assert that "[o]n the existing record, the United States has refused the Visa Application and withheld issuing the requested immigrant visas. Plaintiffs plead nothing in their Complaint that forcing another decision now would lead to a different result." Dkt. 6 at 20. But courts in this District have routinely rejected this argument. *See, e.g.*, *Pourabdollah v. Blinken*, No. 23-CV-1603 (DLF), 2024 WL 474523, at *4 (D.D.C. Feb. 7, 2024). Plaintiffs allege, and courts have agreed in similar cases, that the "refusal" of Plaintiff Ansari's application pending "further administrative processing" is not a final decision. Dkt. 1 ¶¶ 4, 64, 70, 73–74, 91; *see, e.g.*, *Pourabdollah*, 2024 WL 474523, at *4. Their injuries result not from the interim refusals of Plaintiff Ansari's application but from the delay in reaching a true final decision. An order requiring Defendants "to complete [their] review more expeditiously" would redress that harm. *Khazaei v. Blinken*, No. CV 23-1419 (JEB), 2023 WL 6065095, at *4 (D.D.C. Sept. 18, 2023).

Defendants' fourth argument ignores what numerous courts in this District have said about redressability. Defendants contend that Plaintiffs lack standing to sue because no Defendant can redress their injuries. Dkt. 6 at 21–22. Not so. "While the Secretary of State has no legal authority to control which visa applications consular officers grant or deny, nothing precludes him from directing them to decide pending applications within a reasonable time." *Khazaei*, 2023 WL 6065095, at *4; *accord, e.g.*, *Fakhimi v. Dep't of State*, No. CV 23-1127 (CKK), 2023 WL 6976073, at *4 (D.D.C. Oct. 23, 2023). And the Complaint specifically alleges that the Secretary of State "has supervisory responsibility" over the relevant consular officers. Dkt. 1 ¶ 20. That is enough to show redressability with respect to him. The Complaint

likewise alleges that the other Defendants—Rena Bitter, Stephanie Zakhem, and Carson Wu—are all responsible for overseeing "consular activities," *id.* ¶¶ 21–23, and so the Court concludes that Plaintiffs have standing to sue each for the same reasons as with the Secretary of State, *see Lee v. Blinken*, No. 23-cv-1783, 2024 WL 639635, at *3 (Feb. 15, 2024) (concluding that Assistant Secretary Bitter was appropriate defendant in visa-delay suit).

For these reasons, Plaintiffs have standing.

**B.      Plaintiffs Have Not Stated Plausible Unreasonable Delay Claims**

Plaintiffs fail to state a claim because the delay they speak of is not unreasonable as a matter of law. "[T]he central question" in unreasonable-delay cases under both the APA and the Mandamus Act "is 'whether the agency's delay is so egregious as to warrant mandamus.'" *Barazandeh v. U.S. Dep't of State*, No. 23-cv-1581, 2024 WL 341166, at *6 (D.D.C. Jan. 30, 2024) (cleaned up) (quoting *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008)).

To answer that question, courts in this Circuit consider the six "*TRAC*" factors, drawn from the D.C. Circuit's decision in *Telecommunications Research & Action Center (TRAC) v. FCC*, 750 F.2d 70 (D.C. Cir. 1984): (1) "the time agencies take to make decisions must be governed by a rule of reason"; (2) "where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason"; (3) "delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake"; (4) "the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority"; (5) "the court should also take into account the nature and extent of the interests prejudiced by delay"; and (6) "the court need not find any impropriety lurking

7

behind agency lassitude in order to hold that agency action is unreasonably delayed." *Id.* at 80 (cleaned up). "These considerations are often grouped into four basic inquiries":

> First, is there any rhyme or reason—congressionally prescribed or otherwise—for an agency's delay (factors one and two)? Second, what are the consequences of delay if the Court does not compel the agency to act (factors three and five)? Third, how might forcing the agency to act thwart its ability to address other priorities (factor four)? Finally, is the delay intentional or due to any impropriety on the part of the agency (factor six)?

*Khazaei*, 2023 WL 6065095, at *6 (cleaned up).

Taking these inquiries in turn, the Court concludes that the *TRAC* factors do not plausibly point Plaintiffs' way. The Court must therefore dismiss Plaintiffs' case. *See Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340-46 (D.C. Cir. 2023) (affirming dismissal of visa-delay case for failure to state a claim based on *TRAC* factors).

### 1. *TRAC* factors one and two

The first two factors, which consider whether the agency is following a "rule of reason," "congressionally prescribed or otherwise," *Khazaei*, 2023 WL 6065095, at *6 (cleaned up), cut Defendants' way. There is no statutory or regulatory timeframe within which the State Department or a consular officer must re-adjudicate visa applications. "To the contrary, Congress has given the agencies wide discretion in the area of immigration processing." *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017) (noting that a two-year delay in processing an immigration visa "does not typically require judicial intervention"). Absent an express Congressional mandate, the proper inquiry is whether the application has been pending for an unreasonable amount of time as established by case law. *See Sarlak v. Pompeo*, Civ. A. No. 20-0035 (BAH), 2020 WL 3082018, at *6 (D.D.C. June 10, 2020) (stating that, "[a]bsent a congressionally supplied yardstick, courts typically turn to case law as a guide" to determine

whether a delay is reasonable). Moreover, "[a]bsent a precise statutory timetable or other factors counseling expeditious action, an agency's control over the timetable . . . is entitled to considerable deference." *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 555 (D.C. Cir. 2015) (cleaned up).

Case law confirms that the alleged delay here is not unusual or inconsistent with a rule of reason. As a threshold matter, Plaintiff Ansari has already been interviewed by a consular officer and received a final determination on the status of his visa application. Moreover, there is no precise statutory timetable or other factors counseling expeditious action, and the alleged 10-month delay falls far short of judicial precedent in this jurisdiction that has found that even "delays of numerous years are not unreasonable." *Sivananthan v. Blinken*, Civ. A. No. 23-1181 (CKK), 2023 WL 4885858, at *3 (D.D.C. Aug. 1, 2023). Indeed, courts in this District have routinely concluded that delays far greater than 10 months are not unreasonable. *See Da Costa*, 80 F.4th at 342 (four-and-a-half-year delay); *Ghadami v. Dep't of Homeland Sec.*, Civ. A. No. 19-0397 (ABJ), 2020 WL 1308376, at *8 (D.D.C. Mar. 19, 2020) (two-year delay); *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 94 (D.D.C. 2020) (twenty-five-month delay); *Didban v. Pompeo*, 435 F. Supp. 3d 168, 177 (D.D.C. 2020) (two-year delay); *Skalka*, 246 F. Supp. 3d at 153–54 (citing case law that even a ten-year delay in the immigration context is not unreasonable); *Fang Fang Xu v. Cissna*, 434 F. Supp. 3d 43, 55 (S.D.N.Y. 2020) (finding a three-year delay in adjudicating an asylum application to not be unreasonable under the APA). Nothing in Plaintiffs' Complaint supports a reasonable inference that the agency is not following a rule of reason.

Turning to the second *TRAC* factor, Plaintiffs argue that Congress provided an "indication of the speed with which it expects the agency to proceed," *TRAC*, 750 F.2d at 80, in 8 U.S.C. § 1571, which provides:

> It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application, except that a petition for a nonimmigrant visa under section 1184(c) of this title should be processed not later than 30 days after the filing of the petition.

8 U.S.C. § 1571(b); *see also* Dkt. 1 at 31. That language, however, "appears in a section directed not to consular officials but to the Immigration and Nationality Service (INS), a since-dissolved agency distinct from the State Department whose functions have largely transferred to entities within the Department of Homeland Security." *Rashidian*, 2024 WL 1076810, at *7. And the language is precatory rather than binding. *See Da Costa*, 80 F.4th at 344 (observing that § 1571(b) "is insufficient to set a deadline"). Although the D.C. Circuit has reasoned that—at least in the context of a suit against USCIS (a component of the INS's successor agency, DHS)—this provision "somewhat" helps a plaintiff who has waited more than 180 days for an immigration benefit, it has also held that the delay must reach an egregious "level of disproportionality" to justify relief. *Id. Da Costa*, for example, concluded that, even considering the 180-day period given in § 1571, a delay of four-and-a-half years in processing an immigration petition was reasonable. *Id.* at 342, 344, 346. The far shorter delay here does not plausibly reach the requisite "level of disproportionality." *Id.* at 344. On balance, the first two *TRAC* factors support dismissal.

### 2. *TRAC* factor four

The fourth factor, "the effect of expediting delayed action on agency activities of a higher or competing priority," *TRAC*, 750 F.2d at 80, "carries significant weight," *Barazandeh*, 2024

WL 341166, at *9, and strongly favors Defendants. The D.C. Circuit has "refused to grant relief, even though all the other factors considered in *TRAC* favored it, where a judicial order putting [a party] at the head of the queue would simply move all others back one space and produce no net gain." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003) (cleaned up). Plaintiffs request exactly this type of relief. Since "[c]onsular processing capacity is . . . a zero-sum game," an order expediting processing of Plaintiffs' application "would necessarily mean additional delays for other applicants—many of whom undoubtedly face hardships of their own," *Ahmadi v. Scharpf*, No. 23-cv-953, 2024 WL 551542, at *6 (D.D.C. Feb. 12, 2024) (cleaned up); *accord Da Costa*, 80 F.4th at 343–44. As a result, the fourth factor cuts heavily in favor of dismissal.

### 3. *TRAC* factors three and five

*TRAC* factors three and five, which examine "the interests prejudiced by the delay," including the effect on "human health and welfare," *Da Costa*, 80 F.4th at 344 (quoting *TRAC*, 750 F.2d at 80), arguably favor Plaintiffs. Plaintiffs allege that the delay has caused them "significant personal, financial, and emotional hardship" by separating Plaintiff Zoroufchi from her husband, Plaintiff Ansari. Dkt. 1 ¶¶ 7–11. Courts in this District have concluded that similar allegations tilted these factors in other plaintiffs' favor, if only narrowly, *see, e.g.*, *Siddiqui v. Blinken*, 646 F. Supp. 3d 69, 77 (D.D.C. 2022) (finding that the third and fifth *TRAC* factors "slightly" favored a visa-delay plaintiff based on an allegation that the delay "'had a profound and negative impact' on his life"). But, while Plaintiffs' distress is understandable, "many others facing similar circumstances" are experiencing similar harms. *Siddiqui*, 646 F. Supp. 3d at 77 (cleaned up); *accord Bahrami v. Blinken*, No. 23-cv-1477, 2024 WL 3638200, at *7 (D.D.C. Aug. 2, 2024) ("[D]elays in visa processing separate . . . many families."). Without more

11

unusual, urgent harm, the third and fifth *TRAC* factors are not enough to justify overriding the agency's decision-making and moving Plaintiff ahead of other applicants. *See Da Costa*, 80 F.4th at 344–45.

### 4.   *TRAC* factor six

The sixth *TRAC* factor—whether "any impropriety lurk[s] behind agency lassitude," *TRAC*, 750 F.2d at 80 (cleaned up)—does not move the needle. Plaintiffs accuse Defendants of "bad faith" and "arbitrary and unlawful procedure," Dkt. 9 at 58, yet they provide no evidence that Defendants have engaged in any actual improper conduct. But because the Court "need not find any [impropriety] in order to hold that agency action is unreasonably delayed," this factor remains neutral. *Da Costa*, 80 F.4th at 345–46 (cleaned up).

\*     \*     \*

Taken together, the *TRAC* factors do not plausibly point Plaintiffs' way. The Court therefore dismisses this case.

## IV.   CONCLUSION AND ORDER

Plaintiffs' frustration is understandable. But because the Complaint does not plausibly allege that the delay here is unreasonable, the Court must dismiss this case.

For these reasons, the Court hereby **GRANTS** Defendants' Motion to Dismiss, Dkt. 6; **DISMISSES** Plaintiffs' Complaint, Dkt. 1, and this case without prejudice; and **DIRECTS** the Clerk of Court to close this case. **SO ORDERED.**

This is a final appealable Order. *See* Fed. R. App. P. 4(a).

Date:   March 27, 2025

                                              ANA C. REYES
                                              United States District Judge